UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PETER DEPPE on behalf of himself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00528-TWP-DKL |
| | ) | |
| THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND TO STRIKE IRRELEVANT ALLEGATIONS OF PLAINTIFF'S COMPLAINT

This matter is before the Court on a Motion for Partial Dismissal and to Strike Irrelevant Allegations of Plaintiff's Complaint, filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) by Defendant, the National Collegiate Athletic Association ("the NCAA"). (Filing No. 26.) The NCAA moves to dismiss Count Two of Plaintiff Peter Deppe's ("Mr. Deppe") Complaint, as well as Mr. Deppe's requests for injunctive relief. The NCAA also moves to strike irrelevant allegations contained within Mr. Deppe's Complaint under Rule 12(f). For the reasons that follow, the Court **grants in part and denies in part** the NCAA's Motion.

## I. BACKGROUND

The following facts are not necessarily objectively true, but following the standard set forth for considering motions to dismiss, the Court accepts all factual allegations as true and construes the Complaint in the light most favorable to Mr. Deppe.

Mr. Deppe was a football punter in high school. (Filing No. 1 at 4.) He sought to play football at the collegiate level, and was recruited by the following schools: Northern Illinois University ("NIU") (preferred walk-on); Central Michigan University (preferred walk-on);

Michigan State University (top two prospects for scholarship offer); Northwestern University (preferred walk-on); Iowa State University (top two prospects for scholarship offer); University of Toledo (offered scholarship); University of Minnesota (preferred walk-on).  (Filing No. 1 at 5.) Mr. Deppe ultimately chose NIU and enrolled in June 2014 as a preferred walk-on.  (Filing No. 1 at 5.)  He chose to "red shirt" during his first year at NIU, meaning he chose to forego that year of athletic eligibility, which would then carry over to a later year.  (Filing No. 1 at 6.)  Mr. Deppe planned to take over as the starting punter the following year, when he would still have four years of athletic eligibility remaining.  (Filing No. 1 at 6.)  In August 2014, NIU's special teams coach told Mr. Deppe that he would begin receiving an athletic scholarship in January 2015.  (Filing No. 1 at 6.)  That coach, however, soon left to accept another coaching job, and the Head Coach informed Mr. Deppe that he would not be receiving a scholarship.  (Filing No. 1 at 6.)

NIU signed another punter sometime during 2015, which reduced Mr. Deppe's prospects for obtaining playing time or a second scholarship offer.  (Filing No. 1 at 6.)  He received official letters of release from NIU in September 2015 and began recruiting with other schools.  (Filing No. 1 at 6.)  During a visit to the University of Iowa ("Iowa"), the coaching staff told Mr. Deppe that they wanted him on the team if he would be eligible to play during the 2016/2017 season. (Filing No. 1 at 6.)  In September 2015, Mr. Deppe's parents contacted the NCAA regarding whether he would be eligible to play in the fall of 2016.  (Filing No. 1 at 7.)  The NCAA indicated that because Mr. Deppe was transferring from one Division I school to another, the NCAA rules mandated that he would be ineligible for athletic competition for one year post-transfer and could not participate until the 2017/2018 season.  (Filing No. 1 at 7.)

On November 11, 2015, Mr. Deppe's attorney sent a letter to the NCAA explaining Mr. Deppe's circumstances and asking the NCAA to allow him eligibility for the 2016 season.  (Filing

No. 1 at 8.)  The NCAA responded that it did not have a record of a waiver application on Mr. Deppe's behalf from the transfer institution, and that "the waiver process is initiated by an institution to which a student is transferring and submitted to the NCAA Academic and Membership Affairs staff for member committee review."  (Filing No. 1 at 8.)  On or about November 16, 2015, Iowa granted Mr. Deppe academic admission. (Filing No. 1 at 8.) Thereafter, on November 19, 2015, Iowa informed Mr. Deppe that it had decided to pursue another punter who had immediate eligibility, and that it would not pursue an NCAA waiver on his behalf.  (Filing No. 1 at 8.) On December 6, 2015, Mr. Deppe's attorney sent the NCAA another letter, explaining that Mr. Deppe faced a "chicken or egg" scenario:  that Iowa would rather select a candidate with immediate eligibility, as opposed to pursuing a waiver, and therefore that the waiver process operates to the detriment of students seeking to transfer.  (Filing No. 1 at 9.)  The NCAA again responded that only the transfer institution could request a waiver.  (Filing No. 1 at 9.)

On March 8, 2016, Mr. Deppe filed a Complaint in this Court, asserting that the NCAA is in violation of the Sherman Act by (1) limiting the number of Division I football scholarships that a member institution can grant in a given year; and (2) promulgating a "year-in-residency" bylaw that (with exceptions) requires Division I student athletes to forego a year of athletic eligibility when they transfer to another Division I school.  (Filing No. 1 at 3.)  He seeks declaratory and injunctive relief as well as damages.

In Count II of this cause of action, Mr. Deppe argues that the NCAA's transfer bylaws violate the Sherman Act as an unreasonable restraint on trade.  (Filing No. 1 at 31.)  Mr. Deppe focuses his challenge on the "year in residence" requirement, which is listed in Article 14 of the NCAA Division I Manual.  (Filing No. 1 at 19.)  That bylaw reads, in relevant part, as follows:

> 14.5.5.1. General Rule.  A transfer student from a four-year institution shall not be
> eligible for intercollegiate competition at a member institution until the student has

fulfilled a residence requirement of one full academic year (two full semesters or three full quarters) at the certifying institution.

(Filing No. 1 at 19-20).

The NCAA moves to dismiss Count II of Mr. Deppe's Complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  (Filing No. 27 at 9.)  The NCAA also moves to dismiss all of Mr. Deppe's claims for injunctive relief under Rule 12(b)(1), arguing that Mr. Deppe lacks standing to assert them.  (Filing No. 27 at 22.)  And, if the Court grants the NCAA's 12(b)(6) and 12(b)(1) motions, the NCAA moves to strike allegations related to the dismissed counts as irrelevant under Rule 12(f).  (Filing No. 27 at 26.)  The Court heard oral argument on the Motion to Dismiss on March 2, 2017.  (Filing No. 42.)

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to set forth a claim upon which relief can be granted.  "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits."  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  Accordingly, when analyzing a Rule 12(b)(6) motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

At a minimum, the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests; and the factual allegations must raise a right to relief above the speculative level.  *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009); *Tamayo*, 526 F.3d at 1081, 1083.  While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and

neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Although this does not require heightened fact-pleading, it does require the complaint to contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief").

## B.   Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co*., 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc*., 683 F.3d 845 (7th Cir. 2012) (*en banc*). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co*., 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id*. "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff, unless standing is challenged as a factual matter." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the

jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotations omitted).

**C.**     **Rule 12(f)**

Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may (1) act on its own, or (2) on a motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading. *Id.* Motions to strike are generally disfavored; however, "where ... motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989).

## III.   DISCUSSION

**A.**     **Motion to Dismiss Count II**

The Court begins by noting that this issue is virtually identical to that raised in the NCAA's Partial Motion to Dismiss in *Pugh v. National Collegiate Athletic Association,* 2016 WL 5394408 (S.D. Ind. 2016), decided by this Court in September 2016. The parties here are both respective counsel for the parties in *Pugh* and both acknowledged at oral argument that there are no legal issues that distinguish this case from *Pugh*, and that the cases' factual differences do not impact the Court's determination on this issue. Mr. Deppe raised the same arguments previously raised in *Pugh*, respectfully submitting that in *Pugh,* the Court misapplied the Seventh Circuit's reasoning in *Agnew v. National Collegiate Athletic Association,* 683 F.3d 328 (7th Cir. 2012).

The Court concludes that its determination in *Pugh* remains unchanged, and the result is the same in this case.  The NCAA argues persuasively that the challenged "year-in-residence" eligibility bylaw is presumptively procompetitive and, therefore, does not violate the Sherman Act.

The Sherman Act applies to NCAA regulations.  *Agnew*, 683 F.3d at 341.  However, "most of the regulatory controls of the NCAA are justifiable means of fostering competition among amateur athletic teams and therefore procompetitive because they enhance public interest in intercollegiate activities."  *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 117 (1984); *Agnew*, 683 F.3d at 341 (also noting that challenges to "procompetitive" NCAA bylaws are properly dismissed during the motion to dismiss stage).

As this Court concluded in *Pugh*, when considering a challenged bylaw, the Seventh Circuit has stated that the "question to be answered" is whether the challenged NCAA bylaw is "presumptively procompetitive" *id.* (noting that this threshold question is the "first-and possibly only-question" and indicating that, if the question is answered in the affirmative, there is no need for the court to conduct a "Rule of Reason" analysis of the challenged bylaw).  Justifying the procompetitive presumption for certain NCAA regulations, the Seventh Circuit explained that:

> [a] certain amount of collusion in college football is permitted because it is necessary for the product to exist.  Accordingly, when an NCAA bylaw is clearly meant to help maintain that revered tradition of amateurism in college sports or the preservation of the student-athlete in higher education, the bylaw will be presumed procompetitive, since we must give the NCAA ample latitude to play that role.

*Id.* (citing *Bd. of Regents*, 468 U.S. at 117) (internal quotations omitted).

The NCAA bylaw which Mr. Deppe challenges directly relates to eligibility. The challenged "year-in-residence" bylaw is listed in Article 14 of the NCAA Division I Manual, which is entitled "Eligibility: Academic and General Requirements".  (Filing No. 27 at 8.)  In

addition, the challenged bylaw specifically references eligibility in its text.  (Filing No. 1 at 19-20.)

The Court concludes, as it did in *Pugh*, that *Agnew* instructs that eligibility bylaws such as this one are presumptively procompetitive and do not violate the Sherman Act.  *Agnew*, 683 F.3d at 343 ("[m]ost-if not all-eligibility rules…fall comfortably within the presumption of procompetitiveness afforded to certain NCAA regulations"); *see also, Smith v. Nat'l Collegiate Athletic Ass'n*, 139 F.3d 180, 185-86 (3rd Cir. 1998) *vacated on other grounds by Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999); *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1344-45 (5th Cir. 1988) (concluding that the eligibility rules "do not violate the antitrust laws" and noting that "[t]he eligibility rules create the product [of college football] and allow its survival in the face of commercializing pressures").

Accordingly, because the challenged bylaw is directly related to eligibility, it is presumptively procompetitive and no further analysis under the Sherman Act is required.  *See Agnew*, 684 F.3d at 341 (noting that challenges to bylaws that are presumptively procompetitive are properly dismissed "in a twinkling of an eye" without a detailed analysis).  Dismissal of Count II of Mr. Deppe's Complaint is warranted.

**B.**     **Standing and Injunctive Relief**

Mr. Deppe requests equitable relief "requiring NCAA member institutions to offer multi-year Division I football scholarships to remedy their past wrongful conduct, and enjoining Defendant from artificially reducing the total supply of scholarships available to NCAA student-athletes, and enjoining Defendant from restricting players' ability to transfer without loss of athletic eligibility…" (Filing No. 1 at 33).  The NCAA contends that Mr. Deppe has not met his burden to establish that he has standing to raise a claim for injunctive relief, because he has not

established that he is currently subject to the challenged NCAA rules or that he will be subject to them in the future.  (Filing No. 27 at 23.)  Mr. Deppe responds that he has four full years of athletic eligibility remaining, and that he "demonstrated his interest in continuing to play college football by seeking a release from NIU and drawing interest in multiple colleges."  (Filing No. 29 at 35.)

The "irreducible constitutional minimum of standing" requires a showing of (1) injury in fact; (2) causation; and (3) redressability.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073-74 (7th Cir. 2013).  Where a complaint's allegations demonstrate that the plaintiff cannot plausibly meet the requisite standing requirements, the complaint should be dismissed pursuant to Rule 12(b)(1).  *See Retired Chic. Police Ass'n v. City of Chic.*, 76 F.3d 856, 862 (7th Cir. 1996).

A showing of injury-in-fact requires a "real and immediate" threat of future violations of the plaintiff's rights.  *Scherr*, 703 F.3d at 1074.  Mr. Deppe's Complaint contains no allegation that he is currently enrolled in an NCAA Division I institution.  It contains no allegation regarding whether he is attempting to or is interested in playing football at a Division I institution.  As the NCAA points out, "the complaint is silent on what school Deppe is currently attending, whether that school offers Division I football, and whether Deppe is willing or able to participate in that football program, if it exists."  (Filing No. 27 at 24.)  Mr. Deppe has simply provided no allegations that would support a finding that he suffers the "real and immediate" threat of violations of his rights by the NCAA.

Mr. Deppe argues that this case is analogous to *United States v. National Association of Realtors,* 2006 WL 3434263 (7th Cir. 2006), contending that he suffers from the "continuing effects of an anticompetitive policy."  (Filing No. 29 at 36.)  But the allegation that he "demonstrated his interest in continuing to play college football by seeking a release from NIU

and drawing interest in multiple colleges" is not sufficient to confer standing. Absent any allegation that Mr. Deppe risks being subjected to the challenged NCAA bylaws, Mr. Deppe has not pleaded an adequately "real and immediate" threat of future or continuing violations of his rights.

Mr. Deppe also argues that the "inherently transitory" rule applies to his request for injunctive relief, preventing dismissal based on lack of standing. As this Court noted in *Pugh*, student-athletes are limited in their years of eligibility, and class actions are often protracted and drawn out. But, as in *Pugh,* this is not a case in which the student-athlete's eligibility period "timed out" during the pendency of the action. But the Complaint contains no allegations that *at the time he filed his Complaint*, Mr. Deppe was enrolled in a Division I institution or playing or attempting to play football. So, at least as pleaded in Mr. Deppe's Complaint, at no point in the life of this case did he have standing to seek injunctive relief. *See Holmes v. Fisher*, 854 F.2d 229, 233 (7th Cir. 1988) ("[t]o permit the certification of a class headed by a 'representative' who did not have a live controversy with the defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions").

Dismissal of Mr. Deppe's claims for injunctive relief is therefore required, because the Court lacks subject matter jurisdiction over the dispute. The Court notes that Mr. Deppe may be able to establish that he has standing by adequately pleading a sufficiently concrete and particularized injury, and Mr. Deppe at oral argument requested the ability to do so. The Court therefore grants the Motion to Dismiss without prejudice.

**C.**     **Motion to Strike Class Allegations**

Given that the Court has granted the NCAA's motion to dismiss Count II and the request for injunctive relief, the NCAA moves to strike as irrelevant the allegations relating to the Transfer

Core Issues Class.[1]  The NCAA contends that allowing those allegations to remain in the Complaint will needlessly confuse and complicate the case, and that it will suffer prejudice if Mr. Deppe seeks to expand the scope of discovery based on the irrelevant class allegations.  (Filing No. 32 at 24.)

The Court notes at the outset that motions to strike are generally disfavored.  *Midwhey Powder,* 883 F.2d at 1294.  The NCAA conceded at oral argument that if the parties can reach an agreement regarding the appropriate scope of discovery, any risk of prejudice would be diminished.  Moreover, the Court has granted its dismissal of the requests for injunctive relief without prejudice, and Mr. Deppe's counsel indicated at oral argument that he may seek to file an amended complaint if given the opportunity to do so.  Given the prospect of an amended complaint, and the possibility of eliminating any potential prejudice through case management or agreement regarding discovery, the Court denies the NCAA's motion to strike.

## IV.  CONCLUSION

For the foregoing reasons, the Defendant's Motion for Partial Dismissal and to Strike Irrelevant Allegations of Plaintiff's Complaint (Filing No. 27) is **GRANTED in part and DENIED in part**.  Count II is dismissed with prejudice.  Mr. Deppe's injunctive relief claims are dismissed without prejudice.  The Defendant's motion to strike is denied.

Mr. Deppe is granted leave of **twenty one days (21)** from the date of this Order within which to file an amended complaint regarding his injunctive relief claims.

**SO ORDERED.**

Date:  3/6/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

---

[1] Mr. Deppe sues on behalf of himself and two putative classes: (1) the "injunctive relief class", which includes "all individuals who, from November 4, 2011 to the present, have been a member of an NCAA Division I football team"; and (2) the "Transfer Core Issues Class", which includes "all individuals who, from November 4, 2011 to the present, have sought to transfer from one NCAA Division I football school to another NCAA Division I football school, and pursuant to NCAA transfer rules, were considered to be, or would have been considered to be, athletically ineligible to participate in NCAA football for any period of time."  (Filing No. 1 at 27.)

ELECTRONIC DISTRIBUTION TO:

Jacob K. Danziger
jdanziger@schiffhardin.com

Daniel E. Pulliam
FAEGRE BAKER DANIELS LLP
(Indianapolis)
daniel.pulliam@faegrebd.com

Kathy Lynn Osborn
FAEGRE BAKER DANIELS LLP
(Indianapolis)
kathy.osborn@faegrebd.com

Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO
LLP
dank@hbsslaw.com

Jon T. King
HAGENS BERMAN SOBOL SHAPIRO
LLP
jonk@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO, LLP
beth@hbsslaw.com

steve@hbsslaw.com

Joseph N. Williams
RILEY WILLIAMS & PIATT, LLC
jwilliams@rwp-law.com

William N. Riley
RILEY WILLIAMS & PIATT, LLC
wriley@rwp-law.com

Gregory L. Curtner
SCHIFF HARDIN, LLP - Michigan
gcurtner@schiffhardin.com

Robert James Wierenga
SCHIFF HARDIN, LLP - Michigan
rwierenga@schiffhardin.com

Suzanne L. Wahl
SCHIFF HARDIN, LLP - Michigan
swahl@schiffhardin.com

Sara Willingham
THE PAYTNER LAW FIRM PLLC
swillingham@paynterlawfirm.com